RECEIVED
NOV 2 0 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | | |
|---|---|---|
| JONATHAN JAY PARKER | * | CIVIL NO. 6:08-CV-00583 |
| VERSUS | * | JUDGE HAIK |
| A S R C OMEGA NATCHIQ | * | MAGISTRATE METHVIN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**A.    Facts**

This case involves allegations of unlawful firing and disability discrimination in violation of 42 U.S.C 12101, the Americans with Disabilities Act of 1990 (hereon "ADA"). The sole Defendant named in this lawsuit is ASRC Omega Natchiq (hereon "Omega"). The sole Plaintiff in this lawsuit is Jonathan Jay Parker. Plaintiff Parker filed this suit seeking damages for alleged discrimination as prohibited by the ADA. Defendant filed a Motion for Summary Judgment for dismissal of the complaint as well as an award of attorney's fees. In support of their Motion for Summary Judgment, Omega cites Mr. Parker's continued unreasonable complaints against Omega and total lack of any factual or legal basis for his complaint.

Plaintiff Jonathan Parker first applied for employment as a safety inspector at Omega on or about early April 2007. In the Omega General Health and Occupational History Questionnaire filled out at the time of hire, Mr. Parker then represented that he suffered no health problems.

1

Specifically, he denied having high blood pressure or hypertension or being prescribed medication for such a condition. As part of the application process, Mr. Parker was sent to the Acadiana Health Services Walk-In Clinic (hereon the "Walk-In Clinic") in Lafayette, Louisiana on March 30, 2007 for a pre-employment physical as required by Omega for all prospective new employees. In the Walk-In Clinic's Past Medical History form, Mr. Parker indicated he suffered no health problems and, again, specifically denied having high blood pressure. As part of the physical exam done on Mr. Parker on March 30, 2007, the medical examiner measured Mr. Parker's blood pressure on three occasions, and obtained a normal reading each time. Mr. Parker was then hired on April 3, 2007.

In the course of his work, Mr. Parker was sent to Occupational Safety Training, Inc. (hereon "OST") to be fit tested for a respirator. At this point, Mr. Parker had not given Omega any reason to believe that he could not successfully wear a respirator. By his own admission, Mr. Parker indicated he was able to successfully wear respirators for approximately twenty (20) years from 1988 to 2008. When Mr. Parker presented himself to OST to be fit tested for the respirator, the test personnel took a blood pressure reading prior to doing a pulmonary function test. The OST representative noted a high blood pressure reading prior to doing the test. At that time, Mr. Parker was returned to Omega without a successful pulmonary test and without a successful fit for the respirator. Upon his return to Omega, Mr. Parker was advised by his immediate supervisor, Thomas Gravouilla, that if he suffered from high blood pressure/hypertension, he should seek his personal physician and obtain necessary treatment so he could perform his work at Omega. Mr. Parker responded to Mr. Gravouilla that, due to his religion, he would not visit a physician. Mr. Gravouilla then told him to address his blood pressure problem, if he had one, so

that he could meet the requirements of his job. Mr. Gravouilla allowed Mr. Parker approximately one month to address any problems he may have had with high blood pressure/hypertension. It was during this period of time that Mr. Parker was able to return to OST where he was properly fit tested for a respirator, successfully passed his blood pressure and pulmonary tests, and received an appropriate certificate verifying such.

On or about June 12, 2007, Mr. Parker was sent to Mobile, Alabama, along with other Omega employees, to attend an orientation class in the offices of Exxon Mobil Corporation, a client of Omega. The orientation class was a prerequisite to being assigned to a safety inspector job on Exxon's property. It was during this orientation class that Mr. Parker was found sleeping and was made to leave by Exxon Mobil representatives. As a result of his expulsion, Mr. Parker did not obtain clearance from Exxon Mobil to work on its jobs.

Upon Mr. Parker's return to Omega, Mr. Gravouilla, the Omega Safety Director and Parker's boss, terminated Parker's employment due to the fact that he has fallen asleep during the Exxon Mobil orientation class. It was at this point that Mr. Parker first lodged a complaint against Omega with the Occupational Safety and Health Administration (hereon "OSHA") for Omega's alleged failure to provide Mr. Parker with a follow-up medical examination in response to Mr. Parker's failed blood pressure test taken during his initial visit to OST. Based upon Mr. Parker's complaint, OSHA notified Omega of the complaint; however, after reviewing the facts, OSHA took no formal action against Omega. Mr. Parker filed a petition for reconsideration with OSHA which was reviewed by the Appeals Committee in Washington, D.C. The case file was returned to the OSHA Regional Office in Dallas, Texas for reinvestigation on April 16, 2008. It is currently pending further investigation.

Mr. Parker next filed a claim against Omega with the United States Equal Employment Opportunity Commission (hereon "EEOC"). In a letter mailed April 21, 2008, the EEOC notified Mr. Parker that they were closing their file on his charge against Omega. In their letter, the EEOC stated, "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of statutes." The EEOC letter concluded with "Notice of Suit Rights" section indicating Mr. Parker must file an ADA claim against the respondent (Omega) in state or federal court "within ninety (90) days of your receipt of this notice." The instant suit for compensatory and punitive damages in the amount of $300,000.00 followed.

## B. Defendant's Contentions

**Contention #1: Plaintiff cannot show the existence of a "disability" as is required to be covered by the Americans with Disabilities Act of 1990**

Defendant Omega contends Mr. Parker was not terminated because he had high blood pressure. Rather, Defendant Omega asserts Mr. Parker was terminated solely because he slept through an orientation class provided to Omega employees by Exxon Mobil Corporation.

Defendant Omega contends Plaintiff Parker cannot show the existence of a "disability" as defined by the ADA. Under the ADA, a disability is defined as:

> (1) a physical or mental impairment that substantially limits one or more of the major life acts,
> (2) a record of such impairment, or
> (3) being regarded as having such impairment. 42 U.S.C. § 12102(2)(A).

Defendant notes that a physical impairment standing alone does not necessarily constitute a disability as contemplated by the ADA. There must be an impairment that substantially limits

4

one or more of the individual's major life activities. *Dutcher v. Ingalls Ship Building*, 53 F.3d 723, 726 (5th Cir. 1995). Thus, an essential element fo the Plaintiff's case is to establish that (1) he suffered from hypertension or chronic blood pressure, and (2) that his condition substantially limits one or more of his major life activities. *Oswalt v. Sara Lee Corp.*, 74 F.3d 91. Defendant contends Plaintiff cannot present any evidence to even remotely approach satisfying this element of his case. In support of this contention, Defendant notes that the only medical clinic that has ever examined Plaintiff for blood pressure abnormality was the Walk-In Clinic which, on March 30, 2007, found him to have a normal blood pressure on three different readings (See Defendant Exhibit #1, Deposition of Sally Hebert; see also Defendant Exhibit #1, Attachment #3, Walk-In Clinic Physical Exam Form). Defendant further notes that Plaintiff himself professed in the Omega General Health and Occupational History Questionnaire filled out at the time of hire that he has never suffered from high blood pressure or any other physical disability which prevents him from performing any major life activity. (See Defendant Exhibit #1, Attachment #2; Omega General Health and Occupational History Questionnaire). On the Walk-In Clinic's Past Medical History form, Mr. Parker also indicated he suffered no health problems and, again, specifically denied having high blood pressure (See Defendant Exhibit #1, Attachment #3, Walk In Clinic Past Medical History Form).

Defendant contends Mr. Parker's claims that, on a single occasion, an unknown individual at the safety training offices of OST measured a single reading of high blood pressure is insufficient, as a matter of law, to bring an employee within the protection of the ADA. *Id.* Defendant further asserts they have more than satisfied their burden of proving a legitimate, nondiscriminatory reason for Plaintiff's termination from Omega, namely, his falling asleep in

the Exxon Mobil orientation class. Additionally, Defendant directs this Court to the testimony of Mr. Brent Schaubert, the driver who drove Plaintiff to and from the Exxon orientation class. Mr. Schaubert stated that when he arrived to pick up Plaintiff, he asked him "what happened?" Plaintiff Parker responded, "the orientation was so boring (I) fell asleep."

In sum, Defendant contends (1) Plaintiff is unable to establish the existence of a medical diagnosis of high blood pressure or hypertension, (2) Plaintiff cannot establish that the physical condition substantially limits one of his major life activities as required to be covered under the ADA, and (3) Plaintiff cannot overcome the evidence that Defendant Omega had a legitimate motive for the adverse employment action. Accordingly, Defendant prays this Court grants his Motion for Summary Judgment.

**Contention # 2: Defendant is entitled to an Award of Attorney's Fees:**

Defendant directs this Court to Title V of the ADA § 505 which addresses attorney's fees in ADA cases. It reads:

> In any action or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual. 42 U.S.C. 12205

Defendant notes that, in determining whether an ADA claim is frivolous, unreasonable, or without foundation, Omega argues this Court should consider the fact that Plaintiff has previously been denied relief for the same complaints by two government agencies, OSHA and the EEOC. In addition, Defendant asks this Court to consider this individual Plaintiff's propensity to assert groundless suits. Defendant notes Plaintiff is the same individual whose claims were rejected by the United States District Court and by the United States Fifth Circuit

Court of Appeals when he complained that the University of Louisiana - Lafayette discriminated against him on the basis of age when he was denied an opportunity to try out for the football team in 2001 at the age of thirty-one (31). See *Parker v. Authement* Civil Docket No. 01-CV-0974 (W.D.La 2001); *Parker v. Board of Supervisors University of Louisiana-Lafayette*, 270 F. App'x 314 (5th Cir. 2008); *Parker v. Board of Supervisors University of Louisiana-Lafayette*, 2008 WL 4649065 (W.D. La 2008). In addition, Defendant notes Plaintiff also unsuccessfully pursued claims involving racial discrimination against another employer in 2001. See *Parker v. Roclan Services, Inc*. Civil Docket No. 01-CV-0976 (W.D. La. 2001).

In sum, Defendant asserts Plaintiff has demonstrated a propensity to abuse the legal system by asserting frivolous claims. Defendant further asserts that, in the instant case, Plaintiff has totally failed to establish the essential elements of a cause of action under the ADA and has pursued these claims, to the expense of Omega, after being turned down twice by federal agencies who reviewed his complaints.

## C. Plaintiff's Contentions

Plaintiff asserts: (1) Defendant violated the provisions of the ADA by not affording Plaintiff a follow-up medical examination for high blood pressure which was discovered during the initial medical evaluation and (2) Plaintiff's perceived disability falls squarely under the ADA Amendment Act of 2008 (hereon "ADAAA").

Plaintiff asserts Defendant violated the provisions of the ADA by not affording Plaintiff a follow-up medical examination for high blood pressure which was discovered during the initial medical evaluation. Title 29 § 1910 of the Code of Federal Regulations dictates federal

7

Occupational Safety Health Standards. It states in pertinent part:

> The employer did not provide a follow-up medical examination for employees who gave a positive response to any question among questions 1 through 8 in Section 2, A of Appendix C, or whose initial medical evaluation demonstrated the need for a follow-up medical examination. 29 CFR 1910.134(e)(3)(I)

Plaintiff contends his failed blood pressure test at OST "demonstrated the need for a follow-up medical examination" as required by 29 CFR 1910.134(e)(3)(I). Plaintiff asserts Defendant Omega unlawfully discriminated against him based on his high blood pressure disability by not affording him a follow-up medical exam after his positive test. Furthermore, Plaintiff argues Defendant has disregarded evidence recording Plaintiff's high blood pressure, specifically, the positive OST test in early April 2007.

Next, Plaintiff asserts Defendant has overlooked the ADA Amendments Act of 2008 (hereon "ADAAA"). Plaintiff argues the single high blood pressure reading taken at OST amounts to a disability which falls squarely under the ADAAA. Plaintiff correctly notes the ADAAA broadens ADA coverage by allowing a person to recover under the ADA resulting from discrimination based on the *perceived* disability by an employer, here Defendant Omega. Prior to the ADAAA, perceived disabilities were not considered disabilities for ADA purposes. Plaintiff also cites the ADAAA which states, "the ADAAA specifically includes as disabled those persons who have an impairment that is episodic or in remission, if the impairment would substantially limit a major life activity when active." Plaintiff asserts that, even if his high blood pressure was merely episodic, that the single "dangerously abnormal blood pressure" reading at OST in early April 2007 contributed to his being unexplainably tired and in a constant state of sleepiness when riding to and from the Exxon orientation in Alabama. In support of this

contention, Plaintiff directs this Court to the OST class roster (Plaintiff Exhibit #2) which states "BP to high. No test." Plaintiff argues this class roster, specifically the words "BP to high," constitute evidence of OST's certified health care provider's taking of his blood pressure which constituted physical impairment. Plaintiff further argues that, whether or not he believes he has a blood pressure problem or not because of his religious beliefs, does not negate the fact that the medical authorities did not pass him, which, according to Plaintiff, would be a problem regardless of Plaintiff's opinion. Plaintiff argues this fact outweighs his opinion in this case. Plaintiff claims his blood pressure had to be taken three times before the Walk-In Clinic would pass him which, at a minimum, would classify him under the ADAAA as an episodic impairment that Defendant Omega "covered up" by breaching their legal duty to pay for a follow-up examination.

**D.     Analysis**

In this case, Defendant ASRC Omega Natchiq cannot be held liable under the ADA for Mr. Parker's alleged discrimination claim based on his "disability" of high blood pressure.

The ADA Amendments Act of 2008 (ADAAA) was signed into law by President George W. Bush on September 25, 2008. Section 8 of the ADAAA clearly denotes the date which said act becomes effective as January 1, 2009. At the time of this writing, it is mid-November 2008. Accordingly, this Court need not address any of Mr. Parker's claim under the ADAAA as it has yet to take effect. It is worthy of note that, even if the ADAAA were applicable in the instant case, Mr. Parker has failed to provide a single shred of evidence which indicates he suffers from an "impairment that substantially limits one or more major life acts" or "a record of such

impairment," both of which are required by the ADA *and* the not yet effective ADAAA. Given Mr. Parker has not made a claim under the ADAAA, we must now review his ADA claim.

In order for Mr. Parker to defeat Omega's Motion for Summary Judgment and prevail on his ADA disability discrimination claim, he must show the existence of a "disability" as defined by the ADA. Under the ADA, a disability is defined as:

(1) a physical or mental impairment that substantially limits one or more of the major life acts,
(2) a record of such impairment, or
(3) being regarded as having such impairment. 42 U.S.C. § 12102(2)(A).

A physical impairment standing alone does not necessarily constitute a disability as contemplated by the ADA. There must be an impairment that substantially limits one or more of the individual's major life activities. *Dutcher v. Ingalls Ship Building*, 53 F.3d 723, 726 (5th Cir. 1995). Thus, an essential element of the Parker's case is to establish that (1) he suffered from hypertension or chronic blood pressure, and (2) that his condition substantially limits one or more of his major life activities.

Mr. Parker fails to present any competent medical evidence that he suffered from chronic blood pressure or hypertension. In fact, the only piece of evidence indicating same is his Exhibit 2, a Class Roster of Occupational Safety Training, Inc. which simply states, "BP to High. No Test." Certainly, it cannot be said that documentation of this nature by an unnamed person who took Mr. Parker's high blood pressure on a single occasion qualifies as competent medical evidence. This type of evidence is inadmissible for purposes of summary judgment in order to prove chronic high blood pressure or hypertension, or to otherwise prove a physical impairment which rises to the level of a disability as contemplated by the ADA. The following facts are also

fatal to Mr. Parker's burden of proving he has a disability as a result of high blood pressure:

> (1) As part of the physical exam done on Mr. Parker on march 30, 2007, the medical examiner measured Mr. Parker's blood pressure on three occasions, and obtained a normal reading each time (Exhibit #1, Hebert Affidavit, Attachment 3)
> (2) Mr. Parker passed his blood pressure test at OST when he returned to OST within the thirty (30) days Mr. Gravouilla gave him to address his initial failed blood pressure reading at OST (Exhibit #3, Affidavit of Gravouilla).
> (3) Mr. Parker admitted in his Opposition to Defendant's Statement of Undisputed Material Facts that "Plaintiff has informed Defendant that he has never had a problem with high blood pressure, although many doctors have told Plaintiff that he had borderline hypertension, this has not been documented."
> (4) In the same document, Mr. Parker stated that "borderline hypertension is not considered a problem to Parker and his religious beliefs."
> (5) Mr. Parker has never been prescribed and had never taken any prescription medication for high blood pressure (Exhibit #2, Answers to Interrogatories, Interrogatory Number 9).
> (6) Mr. Parker stated that the medicines he has taken during the past ten years are "blessed and unleavened bread and blessed grape juice, prescribed in *Isaiah 53:5* and prescribed in *Matthew 26:26*. I am currently still taking these medications and still under the Physician's (God) care. Barley Grass has also been prescribed in *John 6:10*. Barley Grass is good for high blood pressure. My current prescription for these medications if for high blood pressure upon being alerted by (Omega's) healthcare provider." (Exhibit 2, Answers to Interrogatories, Interrogatory Number 9).
> (6) At the time he was hired by Omega, Mr. Parker, by his own admission, was able to perform all of the tasks of the position of safety inspector, for which he was ultimately hired. (Exhibit 2, Answers to Interrogatories, Interrogatory Number 6).
> (7) Mr. Parker indicated on his application for employment with CORRPRO (his current employer) that he was able to perform the essential function of the job he applied for (coatings inspector). (See Exhibit #4, CORRPRO application for employment)

In light of the above evidence, it cannot be said Mr. Parker suffers from a disability, specifically, high blood pressure. He submits no evidence of any high blood pressure problems in his past medical history, he has admitted on several occasions that high blood pressure has not been a problem for him, he has indicated on no less than two employment applications that he is able to perform the necessary functions of those jobs, barley grass does not constitute "medicine"

11

recognized by the national medical community as a viable medicine for high blood pressure, and no qualified medical provider or physician has provided medical information on his behalf. For these reasons, Mr. Parker cannot be deemed to have a disability for ADA purposes by virtue of a single high blood pressure reading.

Mr. Parker also fails to present any evidence that he is limited in any major life activities. As previously stated, Mr. Parker's employment applications with Omega and CORPPRO conclusively establish that he was physically fit to perform work for Omega without any restriction. Mr. Parker's own statement in his Answers to Interrogatories clearly shows that he was capable of performing all of the duties of work he signed on with Omega to perform. Since Mr. Parker cannot provide this Court with any evidence to even suggest he is limited in one or more of his major life activities, he again fails to establish an essential element of his ADA claim.

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. Fed. Rules of Civ. Proc. Rule 56(e)(2). A non-movant, such as Mr. Parker, may not satisfy its burden to defeat a summary judgment by simply suggesting "some metaphysical doubt as to material facts" or by making unsubstantiated assertions or speculations. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Mr. Parker's total opposition to Omega's motion for summary judgment is based upon his believe that Omega defended *OSHA* regulations, *not* ADA mandates as Mr. Parker alleged in his original complaint. He repeatedly expresses his belief that when an employee of Occupational

12

Safety Training ("OST"), a training and testing company (not a qualified medical provider), noted a single high blood pressure reading, that somehow compelled Omega to provide what Parker terms a "follow up medical examination" and that Omega's failure to do so violated OSHA. This Court notes that whether or not an OSHA violation occurred has nothing to do with this lawsuit. Mr. Parker has sued Omega under the Americans with Disabilities Act, *not* OSHA. The United States Supreme Court has recognized that enforcement of OSHA is the sole responsibility of the Secretary of Labor. 29 U.S.C. § 651; *Cuyahoga Valley Railway Company v. United Transportation Union*, 474 U.S. 3, 6, 106 S.Ct. 286, 88 L. Ed. 2d (1985). The Fifth Circuit Court of Appeals has recognized that there is no private right of action arising out on alleged violation of OSHA regulation. *Valdez v. Joy Technologies*, 29 F.3d 623 (5th Cir. 1994); *George v. Aztec Rental Center, Inc.*, 763. F.2d 184, 186-187 (5th Cir. 1985). See also *Dixon v. Boise Cascade Corp.* 163 F.3d 1355 (5th Cir. 1998) (approving the decision on this issue in *George v. Aztec Rental Center, Inc.*, supra). The issue of whether Omega violated any OSHA regulations is a matter for resolution between Omega and the Secretary of Labor. Parker has indicated his petition for reconsideration is under review by OSHA's regional office in Dallas. Omega has indicated that they have responded and will continue to respond to the Secretary of Labor on these issues. Accordingly, Mr. Parker's argument that he may somehow bring a claim against Omega under the ADA for a violation of OSHA for failing to provide a "follow up medical examination" is moot. As previously stated, proper adjudication of an OSHA violation is the sole responsibility of the Secretary of Labor, *not* the district courts. Furthermore, assuming this Court did have jurisdiction to hear Mr. Parker's OSHA claim, it is clear that the OST test Mr. Parker took does not qualify as an "initial medical evaluation" as contemplated by OSHA.

13

Mr. Parker's initial medical evaluation was at the Walk-In Clinic, a qualified medical provider. As such, Mr. Parker has again failed to present evidence sufficient to support essential elements of his case.

In order to prevail in his ADA claim, Mr. Parker's claim of disability must be supported by the opinion of a healthcare professional and must identify the claimed functional limitations. Upon review of the evidence in this case, no healthcare provider has diagnosed a disability. There exists no evidence that Mr. Parker has ever been diagnosed with a phsyical impairment, namely, high blood pressure. Lastly, there is no evidence indicating Mr. Parker is functionally impaired as contemplated by the ADA. Thus, Mr. Parker has failed to provide sufficient evidence of his alleged disability.

This case is simple: Mr. Parker was fired for ***good cause*** by Omega as a result of falling asleep at an Orientation Seminar for Exxon Mobil, a client of Omega. Mr. Parker applied for work at Omega as a safety inspector. Omega sent Mr. Parker to the Exxon orientation in order for him to become knowledgeable in, among other things, Exxon's safety policies and procedure. This type of information is critical albeit absolutely necessary in order for a safety inspector to perform his employment duties in the safest and most prudent manner possible. If Mr. Parker did not pay attention in this class, how could Omega competently assign him to an Exxon job and feel confident Mr. Parker's safety inspections were, in fact, safe? Given Mr. Parker's own admission that the orientation was "boring," this Court cannot see any reason as to why *any* reasonable employer standing in Omega's shoes would not have taken the identical termination action as Omega did. In light of the evidence before this Court, Parker's termination was the *only* responsible option Omega could have taken.

## E. Conclusion

Based on the aforementioned facts in this case, it is clear Plaintiff Jonathan Jay Parker has failed to meet his burden of showing a genuine issue of material facts exists regarding his alleged ADA disability discrimination claim against Defendant ASRC Omega Natchiq.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgment [Court Doc. #25] is **GRANTED**. Plaintiff is cast with all costs of this litigation to include all filing fees and any deposition costs. The Court will not award attorney fees at this time.

THUS DONE AND SIGNED in Lafayette, Louisiana, on the 17th day of November, 2008.

CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

COPY SENT:
DATE: 11/20/08
BY: CAS
TO: RTH